UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA CARSON,<br>　　　　Plaintiff,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA,<br>　　　　Defendant. | Civil Action No. 14-1976 (EGS-AK) |

**MEMORANDUM OPINION**

Plaintiff Alicia Carson seeks to present the Court with additional evidence that was improperly excluded or otherwise unavailable at the due process hearing. (Pl.'s Mot. [9] at 1.) United States District Judge Emmet G. Sullivan referred this matter to the undersigned for a determination of Plaintiff's Motion to Permit Additional Evidence ("Plaintiff's Motion"). (*See* Nov. 10, 2015 Min. Order). For the reasons discussed below, Plaintiff's Motion is granted in part and denied in part.

## I.　　Factual Background

Plaintiff is the mother of D.C., a minor child who is entitled to receive a free appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act and the Individuals with Disabilities in Education Improvement Act (collectively, "IDEA"), 20 U.S.C. § 1400 *et seq.*

Plaintiff filed an administrative due process complaint on May 22, 2014, and an amended complaint on June 10, 2014, alleging that the District of Columbia Public Schools ("DCPS") denied D.C. a FAPE by (1) failing to timely evaluate D.C. after Plaintiff made a request on October 25, 2013; (2) failing to meet its Child Find obligations; (3) failing to assess the circumstances warranting an evaluation; (4) failing to have an appropriate Individual Education

1

Program ("IEP") at the beginning of the school year; and (5) failing to provide an appropriate placement. (Compl. [1] at 5.)

On June 17, 2014, the parties held a resolution session meeting. (AR 92–95.) At the meeting, DCPS offered to perform a comprehensive psychological evaluation and functional behavior assessment to determine whether D.C. was eligible for special education services. (AR 93.) Plaintiff requested that the following information be provided before the evaluation, otherwise Plaintiff would not provide her consent to evaluate her child:

1. A list of all evaluations to be performed, i.e.—the Woodcock Johnson III, etc.
2. The names of all evaluators and which evaluations they will be conducting;
3. The educational background of all evaluators, including the degree(s) they received and the year(s) in which they received them;
4. All boards and/or agencies in which the individual is currently licensed or certified, the date in which those licenses or certifications were granted or issues, and the license or certification number for each agency and/or board.

(AR 93.) Ms. Zalika Wright, a special education coordinator at D.C.'s high school, stated that she was not privy to the requested information, but suggested Plaintiff contact the Office of the State Superintendent of Education to get the answers. (AR 93.) Ms. Wright also told Plaintiff to send her an email after she found the answers because Ms. Wright would then send her a consent form. (AR 93.)

The parties also discussed a possible settlement agreement. (AR 94.) Contrary to Plaintiff's requests, however, DCPS would not offer any attorney's fees or compensatory education. (AR 94.) As such, the parties did not enter into a settlement agreement or resolve the matter during the resolution period. (*See* AR 94–95; Pl.'s Mot. Ex. 4 [9-4].)

On July 16, 2014, Plaintiff filed a notice of her intent to raise procedural errors that occurred during the resolution session. (AR 112.) Specifically, Plaintiff alleged that DCPS (1) failed to approach the resolution session meeting as an opportunity to resolve all of Plaintiff's

concerns; (2) failed to have someone at the resolution session meeting who could negotiate a settlement agreement "in a meaningful way"; and (3) refused to provide compensatory education. (AR 112–13.)

On July 23, 2014, the administrative hearing was held. (AR 252–485.) On August 24, 2014, the Hearing Officer's Determination ("HOD") was issued and denied all the relief requested by Plaintiff. (AR 15.) Plaintiff now seeks to present the Court with additional evidence in anticipation of her motion to reverse the HOD. (Pl.'s Mot. [9] at 1.)

## II.     Legal Standard

Under the IDEA, a party aggrieved by a hearing officer's decision may seek review in either state or federal court. 20 U.S.C. § 1415(a)(2)(A). During its review, the district court "shall receive the records of the administrative proceedings . . . [and] shall hear additional evidence at the request of a party[.]" *Dist. of Columbia v. Masucci*, No. 13-cv-1008 (PLF), 2014 WL 329621, at *1 (D.D.C. Jan. 30, 2014) (quoting 20 U.S.C. § 1415(i)(2)(C)). Despite the statute's use of the word "shall," the D.C. Circuit has held that district courts have broad discretion to accept or reject additional evidence. *Id.*; *Reid ex. rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 521–22 (D.C. Cir. 2005); *see also Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1241 (10th Cir. 2009) (noting that a "federal court proceeding must maintain the character of review and not rise to the level of a *de novo* trial.") (internal quotation omitted).

"In determining whether to consider additional evidence, '[t]he reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the

administrative hearing.'" *Dist. of Columbia v. Masucci*, No. 13-cv-1008 (PLF), 2014 WL 329621, at *1 (D.D.C. Jan. 30, 2014) (quoting *Town of Burlington v. Dep't of Educ. for Commonwealth of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984)).

### III.   Discussion

Plaintiff seeks to supplement the administrative record with four types of documents: (1) emails sent from Plaintiff's counsel to Zalika Wright that were used for impeachment purposes at the administrative hearing; (2) emails between Plaintiff's counsel and DCPS along with a copy of a proposed settlement agreement to show that DCPS engaged in misconduct; (3) an individualized education plan and multi-disciplinary team notes that occurred after the administrative hearing to show the Hearing Officer committed "factual errors" in the HOD; and (4) a psychiatric evaluation that was completed after the administrative hearing to challenge the HOD's finding that DCPS met its Child Find obligations.[1]  (*See* Pl.'s Mem. [9-1] at 3–6; Pl.'s Mot. Ex. 3–7 [9-3–9-7].)  These requests will be addressed in turn.

#### A.   Exhibit 3: June 20, 2014 Emails from Plaintiff's Counsel to Zalika Wright

Plaintiff seeks to add two emails to the record that were used for impeachment purposes at the administrative hearing, but not included in the administrative record.  (Pl.'s Mem. [9-1] at 3; *see also* Pl.'s Mot. Ex. 1 [9-3].)  At the administrative hearing, Ms. Zalika Wright testified that she told Plaintiff at the resolution session meeting to email her after she reviewed the qualifications of the evaluators.  (AR 416.)  Once Ms. Wright received Plaintiff's email, she would then send Plaintiff a consent to evaluate form.  (AR 416.)  Ms. Wright also testified that she had not received any communication from Plaintiff or her attorney following the resolution

---

[1] Plaintiff also requested the Court to replace page 12 of the psycho-educational evaluation in the administrative record because the copy filed in the record was unreadable.  (Pl.'s Mem. at 6.)  Defendant has since corrected the error and replaced the page.  (*See* Errata Correcting Administrative Record [10].)  Thus, this issue has been resolved.

4

session, thereby implying that Plaintiff was at fault for the untimely evaluation of her child because parental consent is a necessary predicate to performing an evaluation. (*See* AR 416); 34 C.F.R. §300.300(a)(1)(i).

During cross-examination, Plaintiff's counsel presented Ms. Wright with two emails that were allegedly sent to her by Plaintiff's attorney after the resolution session meeting. (AR 419.) Defense counsel objected to the presentation of these emails because he had not yet reviewed them. (AR 419.)

The Hearing Officer decided to allow Plaintiff to use the documents: "Well -- and the bare minimum rule, I allow it, because definitely it (inaudible) impeaching information, impeaching material." (AR 420.) Plaintiff now relies on this statement from the Hearing Officer as evidence that the two emails were admitted into evidence, but improperly excluded from the administrative record. (Pl.'s Mem. at 3.)

Reading the Hearing Officer's statement in context, however, shows that Plaintiff is mistaken. The Hearing Officer's statement only allowed Plaintiff to use these documents for impeachment purposes. Plaintiff never moved to have the emails admitted into evidence in the first place. (*See* AR 419–20.)

Plaintiff's failure to submit these emails into evidence at the administrative hearing dismantles her current request to add the emails to the administrative record. The various reasons for supplementing the administrative record focus on evidence that is either acquired after the hearing or omitted from the record due to some error in the hearing process by the agency. *Dist. of Columbia v. Masucci*, No. 13-cv-1008 (PLF), 2014 WL 329621, at *1 (D.D.C. Jan. 30, 2014) ("The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper

5

exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."). Notably absent from the list of justifications to supplement the record are those that deal with evidence that was available at the hearing, but due to an omission by a party, not added to the administrative record. *See id.*; *Foland M. v. Concord Sch. Committee*, 910 F.2d 983, 997 (1st Cir. 1990) ("In the absence of special circumstances, courts should ordinarily exercise that discretion in favor of excluding the belatedly offered evidence."). Because of this, the Court will not consider Plaintiff's exhibit 3 containing the two emails as evidence in the HOD appeal.

### B.   Exhibit 4: Evidence of DCPS Misconduct During the Resolution Period

Plaintiff requests the Court to add exhibit 4—which consists of hearing exhibits 8, 9, and 12—to the administrative record on the basis that the Hearing Officer improperly excluded them. (Pl.'s Mot. Ex. 4 [9-4]; Pl.'s Mem. [9-1] at 4.) Hearing exhibits 8 and 9 involved email chains between Plaintiff's counsel and DCPS regarding DCPS's decision not to include compensatory education or attorney's fees in the proposed settlement agreement. (*See* Pl.'s Mot., Ex. 4 at 1–5.) Hearing exhibit 12 was a copy of the proposed settlement agreement. (*See* Pl.'s Mot., Ex. 4 at 5–10.)

Plaintiff offered these three hearing exhibits to show that DCPS engaged in misconduct at the resolution session meeting by conditioning the settlement agreement on a waiver of her attorney's fees and implementation fees. (Pl.'s Mem. at 4.) The Hearing Officer excluded these exhibits because they concerned settlement negotiations that she believed were "outside the jurisdiction of the hearing." (AR 277–81.)

The IDEA provides that "[t]he party requesting the due process hearing may not raise issues at the due process hearing that were not raised in the due process complaint . . . unless the

other party agrees otherwise." U.S.C. § 1415(f)(3)(B), 34 CFR § 300.511(d).  Plaintiff does not dispute that she did not raise the misconduct allegations in her complaint.  (*See* Pl.'s Reply [13] at 3.)  However, Plaintiff argues that DCPS consented to allow her to raise these issues in the *Blackman/Jones* Consent Decree, whereby it agreed that "[a]ny alleged procedural failures that occur during the RS [Resolution Session Meeting] may be presented to the HO [Hearing Officer] at the due process hearing and considered by the HO, consistent with 20 U.S.C. § 1415(f)(3)(E), 34 CFR § 500.513."  (*See id.*; *Blackman/Jones* Consent Decree, Case No. 97-cv-1629 [1762–4], at ¶ 36; AR 138.)

The *Blackman/Jones* Consent Decree arose out of two 1997 consolidated class action lawsuits—*Blackman v. District of Columbia* and *Jones v. District of Columbia*—challenging the inadequacies of DCPS's special education system and failures to comply with the IDEA.  *See Blackman v. Dist. of Columbia*, No. 97-cv-1629 (D.D.C. 1997) (consolidated with *Jones v. Dist. of Columbia*, No. 97-cv-2402 (D.D.C. 1997)).  In a 2006 Consent Decree, commonly referred to as the "*Blackman/Jones* Consent Decree," the District of Columbia agreed to improve many of its shortfalls in its special education system, such as eliminating the backlog of students waiting for special education hearings and reducing the wait time between the Hearing Officer's Determination ("HOD") and implementation of services.  (AR 133, 139).

Important to this case, the *Blackman/Jones* Consent Decree only protected two classes of plaintiffs:  The first subclass (the "*Blackman* class"), protected students "who present complaints to DCPS . . . [under] the IDEA and whose requests for impartial due process hearings . . . are overdue according to these provisions."  (AR 127.)  The second subclass (the "*Jones* class"), protected students "who are entitled to have DCPS provide them with a free appropriate public education (FAPE) and who have been denied same [sic] because DCPS either (a) has failed to

fully and timely implement the determinations of hearing officers, or (b) failed to fully and timely implement agreements concerning a child's identification, evaluation, educational placement, or provisions of FAPE that DCPS has negotiated with child's parent or education advocate." (AR 128.)

On July 5, 2011, after finding that the District had timely adjudicated hearing requests for a sufficient period of time, the Court ordered that the *Blackman* portion of the consolidated lawsuit be dismissed. (*See* J. Friedman Order, Case No. 97-cv-1629 [2259].) On December 18, 2014, after determining that the District had sufficiently eliminated its backlog regarding the untimely implementation of hearing officer determinations and settlement agreements, the Court ordered that the *Jones* portion of the consolidated lawsuit be dismissed. (*See* J. Friedman Order, Case No. 97-cv-1629 [2504].)

A review of the procedural history of the *Blackman/Jones* consolidated lawsuit shows that Plaintiff is not a protected member of the *Blackman/Jones* Consent Decree. On May 22, 2014, Plaintiff filed her due process complaint. At this time, the *Blackman* portion of the consolidated lawsuit was already dismissed, thus Plaintiff could not be a protected member of the *Blackman* class. Plaintiff is also not a protected member of the *Jones* class because Plaintiff never entered into a settlement agreement with DCPS, and there are no allegations that DCPS failed to timely implement the HOD. Indeed, there were no services that needed to be implemented by DCPS because the HOD denied Plaintiff all relief. (AR 15); *see also Gray v. D.C. Public Schools*, 688 F. Supp. 2d 1, 5 (D.D.C. 2010) (finding Plaintiff was not a protected member of the *Blackman/Jones* Consent Decree because Plaintiff "has not indicated that she entered into any settlement agreement with Defendants, or that any provision of her HOD has not been implemented in a timely fashion."). Because Plaintiff is not a member of the protected

classes in the *Blackman/Jones* Consent Decree, her reliance on the *Blackman/Jones* Consent Decree as evidence that the District agreed to her raising procedural violations at the administrative hearing is misplaced.

Having found that the District did not consent to allowing Plaintiff to raise misconduct claims, the undersigned also finds that it would be improper to supplement the record with such evidence. The IDEA states that "[t]he party requesting the due process hearing may not raise issues at the due process hearing that were not raised in the due process complaint[.]" U.S.C. § 1415(f)(3)(B), 34 CFR § 300.511(d). Here, Plaintiff did not include a misconduct claim in her due process complaint. Allowing Plaintiff to introduce this evidence on appeal that was properly excluded below would convert the proceeding into a *de novo* trial. As such, the Court will not consider Plaintiff's exhibit 4—which consists of hearing exhibits 8, 9, or 12—as evidence in the HOD appeal.

    **C.**    **Exhibits 5 and 6: The September 29, 2014 Multi-Disciplinary Team Meeting Notes and the October 27, 2014 Individualized Education Plan**

Plaintiff seeks to supplement the administrative record with multi-disciplinary team ("MDT") meeting notes and an individualized education plan ("IEP") that were created after the issuance of the Hearing Officer's determination ("HOD"). (Pl.'s Mem. [9-1] at 5.) In the HOD, the Hearing Officer concluded that DCPS did not deny D.C. a FAPE by failing to timely evaluate him. (AR 12.) In making her determination, the Hearing Officer noted,

> Before [DCPS] may provide special education services to a Student, [DCPS] must conduct a full and individual initial evaluation. *See* 34 C.F.R. 300.301(a). However, before such evaluation process may begin, an informed parental consent must be obtained. 34 C.F.R. §300.300(a)(1)(i). In the case at bar, no such consent from the parent has been obtained.

(AR 10.)

9

Plaintiff argues that the MDT notes and the IEP should be admitted because they show that the Hearing Officer committed a "factual error" by finding that DCPS needed to conduct a full initial evaluation *before* providing special education services to D.C. (Pl.'s Reply [13] at 6–7.) Specifically, the IEP that Plaintiff requests to add to the record ultimately found D.C. to be eligible for special education services, but "DCPS never conducted its own evaluation but instead relied exclusively on the court-ordered psychological and psychiatric evaluations."[2] (Pl.'s Reply at 7.) According to Plaintiff, the MDT notes and IEP "show beyond all dispute that DCPS was not required to conduct its own evaluations prior to finding the student to be eligible." (*Id.*)

The undersigned is not persuaded. First, the statement Plaintiff characterizes as a "factual error" is merely a restatement of the governing regulation, not a factual finding. *See* 34 C.F.R. § 300.301(a) ("Each public agency must conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability under this part."). Thus, the undersigned fails to see how the MDT notes and IEP could challenge the HOD on these grounds, or is relevant to the issues of the case.

Moreover, Plaintiff's statement that DCPS relied "exclusively" on the July 22, 2014 psychiatric evaluation is factually incorrect. The part of the MDT meeting notes that Plaintiff omitted and replaced with an ellipses shows that DCPS relied upon the "psychiatric and psychological assessments, *as well as other existing data*," such as D.C.'s transcript, schedule, and reports from teachers. (MDT notes [9-5] at 2 (emphasis added); *see also* Pl.'s Reply at 7.)

Finally, allowing Plaintiff to supplement the record with such evidence runs the risk of converting the proceeding into a *de novo* trial. The Hearing Officer determined that no special

---

[2] To support this proposition, Plaintiff quotes the MDT notes as follows: "The purpose of today's meeting is to review the independently provided psychiatric and psychological assessments . . . ." (MDT notes [9-5] at 2; Pl.'s Reply at 7.)

education services were warranted for D.C. (AR 12.) The Hearing Officer based her decision on the fact that Plaintiff "has not met her burden of proof on this issue" because Plaintiff had not provided proof that she consented to begin the evaluation process as required under the IDEA. (*See* AR 9–12.) The MDT notes and IEP, however, show that special education services were eventually warranted for D.C. In essence, this new evidence seeks to challenge the Hearing Officer's finding that Plaintiff failed to meet her burden by supplementing the record with information that was not presented to the Hearing Officer at the time. For the foregoing reasons, the Court will not supplement the administrative record with MDT meeting notes or the IEP.

### D. Exhibit 7: July 22, 2014 Psychiatric Evaluation

Plaintiff alleges in her complaint that DCPS denied her child a FAPE by failing to meet its Child Find obligations. (Compl. [1] at 5.) Under the Child Find provision of the IDEA, DCPS is required to have policies and procedures in effect that ensure that children with disabilities are identified, located, and evaluated so that they can receive special education services. *See* 34 C.F.R. § 300.111. In this case, the Hearing Officer concluded that DCPS met its Child Find obligations because there was no evidence that DCPS knew or had reason to suspect D.C. of having a disability. (AR 13.)

Plaintiff now seeks to supplement the record with a July 22, 2014 psychiatric evaluation. (Pl.'s Mem. [9-1] at 6.) The evaluation was completed a day before the administrative hearing, but was not presented at the hearing because of IDEA's five-day disclosure deadline. *See* 20 U.S.C. § 1415(f)(2) ("Not less than 5 business days prior to a hearing . . . each party shall disclose to all other parties all evaluations completed by that date . . . that the party intends to use at the hearing."). According to Plaintiff, this document should be added because it "demonstrates the extent to which the student's disabilities impaired his ability to access the

general education curriculum, thereby rebutting the hearing officer's finding that DCPS 'did not suspect or have reason to suspect the Student of having a disability or [being] in need of special education services.'"  (Pl.'s Reply [13] at 6.)

Defendant argues that the psychiatric evaluation should be excluded on grounds that it "does not challenge the decisions of the hearing officer (*see Miller* 565 F.3d at 1241) because there is no evidence that the psychiatric evaluation was available to DCPS or the hearing officer while the administrative proceedings were ongoing."  (Def.'s Opp'n [12] at 10 (internal quotations marks omitted)).

The undersigned agrees with Plaintiff.  Without addressing the merits of Plaintiff's Child Find allegations, the psychiatric evaluation could show that the student suffered from such severe emotional and behavioral disorders that anyone who interacted with him would have suspected a disability.  This would substantiate Plaintiff's claim that DCPS violated the IDEA's Child Find provisions.  Accordingly, the Court will consider the July 22, 2014 psychiatric evaluation to the extent that it is necessary to resolve the issues in this case.

## IV.    CONCLUSION

For the reasons set forth in above, Defendant's Motion to Compel [9] is granted in part and denied in part.  Plaintiff's request to supplement the administrative record with the July 22, 2014 Psychiatric Evaluation [9-7] is GRANTED.  Plaintiff's requests to supplement the administrative record with all other exhibits are DENIED.  An Order consistent with this Memorandum Opinion will be issued separately.

DATE: May 20, 2016                                       /s/
                                                       ALAN KAY
                                                       UNITED STATES MAGISTRATE JUDGE